UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LESLIE LEE DAUGHERTY,

Plaintiff,

vs.

Case No. 08-CV-11287
HON. GEORGE CARAM STEEH

ROSEVILLE POLICE OFFICER
MATTHEW BRIAN DICKEY, and
THE CITY OF ROSEVILLE,

Defendants.

_______________________________/

ORDER GRANTING IN PART, AND DENYING IN PART, DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (# 22)

Defendants Roseville Police Officer Matthew Dickey and the City of Roseville move for summary judgment of plaintiff Leslie Daugherty's 42 U.S.C. § 1983 claims that the defendants violated the Fourth and Fourteenth Amendments by unreasonably handcuffing Daugherty without probable cause, applying excessive force, and criminally prosecuting her without probable case. A hearing was held on August 27, 2009. For the reasons set forth below, defendants' motion will be GRANTED, IN PART, to the extent Daugherty alleges municipal liability against defendant Roseville. Defendants' motion will be DENIED, IN PART, to the extent Daugherty alleges Officer Dickey is liable for arresting her without probable cause, applying excessive force, and malicious prosecution.

## I. Background

Daugherty filed a complaint on March 25, 2008 alleging she was tasered three times, handcuffed, and arrested by Officer Dickey during the evening of July 1, 2007 at her home in Roseville, Michigan. Daugherty alleges that Roseville Officers were dispatched to her

home after a neighbor called and reported a fight in the street. While Officer Dickey allegedly took a position in the backyard of the home, Daugherty was instructed by another Officer to go inside and retrieve one of her sons, who was believed to be involved in the fight. Daugherty alleges that Officer Dickey entered the house from the back with his firearm and taser drawn, and falsely accused her of challenging him for standing in the backyard with his pistol drawn and telling him "I'll show you a fucking gun." Daugherty alleges Officer Dickey also falsely accused her of being enraged and charging at him with a set of keys raised above her head. Officer Dickey allegedly asked Daugherty after the first taser, "where is he at," and continued to taser her after she gave unsatisfactory answers. Daugherty alleges Officer Dickey caused her to be falsely charged with assaulting a police officer in violation of M.C.L. § 750.81d(1), and falsely testified against her during a three-day criminal jury trial. Daugherty was acquitted of the charges on March 6, 2008.

Count I alleges Officer Dickey is liable under 42 U.S.C. § 1983 for violating the Fourth and Fourteenth Amendments by unreasonably handcuffing Daugherty without probable cause, applying excessive force by tasering her three times, and prosecuting her for assaulting a police officer without probable cause. Count II alleges City of Roseville is liable under § 1983 for a policy, custom, or practice of failing to train, supervise, and discipline, causing the alleged constitutional violations.

The record shows that Roseville Officers were dispatched to Daugherty's home at 26201 Compson after receiving a complaint of loud music and profanity from neighbors across the street at 26220 Compson. Dispatch also received 911 calls of neighbors fighting in the street, and use of an unknown pipe-like weapon. Officer Andrea Olewnik first arrived at the scene, followed by Officer Dickey and Officer Scott Burley. The fight was reported to be between neighbor Stephen Smith, age 44, whose wife had called 911, and

Daugherty's sons Darin Bailey, age 27, and Daniel Bailey, age 23. Daugherty arrived home very shortly after the Officers arrived. Neighbors reported to the Officers that the two brothers had run inside the house. Officer Dickey knew it had been reported that a pipe-type weapon had been used during the fight by one of the brothers, and took a position in the backyard while Officer Olewnik and Officer Burley remained in front talking with Daugherty and others. Daniel Bailey exited from the front of the home without a weapon, and the whereabouts of Darin Bailey remained unknown. Officer Burley instructed Daugherty to go inside the house and retrieve her son Darin. Officer Dickey, standing at the back of the house at the time, was not informed that Daugherty was entering the home through the front door.

## II. Deposition Testimony and DVD

The confrontation of Daugherty and Officer Dickey inside the home are the subject of this lawsuit. There were no eyewitnesses.

### A. Officer Dickey

Officer Dickey testified that he took a position in the back of the house to "shrink the problem and contain it," believing that someone was in the home. Officer Dickey was unaware that Daugherty had entered the house. Standing seven or eight paces away from the house holding a .45 caliber handgun, Officer Dickey could see inside the home through a glass storm door. Officer Dickey testified that he saw Daugherty inside, and told her to come outside because the Officers were looking for Darin, who may be armed. According to Officer Dickey, Daugherty responded "Who the fuck are you to have a gun in my backyard?!" Daugherty also allegedly stated "You wanna gun, I'll show you a fuckin gun!" Officer Dickey alleges that Daugherty started to walk down basement steps, prompting him to enter the home using the backdoor and yell repeatedly for Daugherty to "stop." Daugherty stopped more than half-way down the stairs after Officer Dickey commanded

"Stop or I'm going to shoot you with the taser." Officer Dickey testified that, after he ordered her to come up the stairs, she started walking up the stairs and yelling "get out of my house." Officer Dickey attested that Daugherty then charged him, holding keys in her right hand which she raised above her head in a threatening manner. Officer Dickey testified that he first tasered Daugherty at the top of the landing as he was backing up through the backdoor. The first taser delivered a five second shock, or "cycle." Officer Dickey testified that he gave Daugherty a second and third one-second shock to get Daugherty to drop the keys and stop struggling for purposes of handcuffing. Officer Dickey denied recycling the taser the second or third time to coerce Daugherty into telling him where her son was located in the home.

**B. Daugherty**

Daugherty testified that she entered the house at Officer Burley's direction, yelling her kids' names and finding that no one was on the first floor of the ranch home. Daugherty attests that she walked through the livingroom and into the kitchen, then turned to enter the basement when she saw Officer Dickey standing in the backyard. Daugherty attests that Officer Dickey was pointing a handgun at her, and she asked him why. Daugherty admits it was possible that she said "who the fuck are you to have a gun in my backyard?" Daugherty denied, however, ever threatening to get a gun, or any other type of weapon. Daugherty testified that Officer Dickey starting yelling at her "who's in the house," and she responded as she stood on a basement stair that she did not know. Daugherty testified that Officer Dickey ordered her to "get up here" and "get on the ground," and told her she was under arrest. Daugherty asked Officer Dickey what he was talking about and, as she remained on the basement stairs, he shot her with the taser. Daugherty attests that she was yelling and screaming for Officer Dickey to stop as she moved from the third step to the kitchen and laid on the floor. Daugherty testified that Officer Dickey then repeatedly

asked her who was in the house, and when she said she didn't know, he administered a second tasing. Daugherty testified that Officer Dickey again asked her who was in the house, and when she said she didn't know, he administered the third shock. Daugherty remembered having keys in her hand after the first tasing, but could not recall whether they were in her hand after the second tasing. Daugherty denied raising the keys above her head or attempting to strike Officer Dickey.

**C. DVD**

Daugherty submits as evidence a DVD containing audio/video recordings taken from two patrol cars. The recordings were taken outside the home, and contain no video of the confrontation between Daugherty and Officer Dickey. Daugherty relies on the DVD, which contains: (1) audio of the arrest from Officer Scott Burley's uniform microphone; and (2) a conversation among Officer Dickey, Officer Burley, and Daugherty as she was being transported to jail.

Carefully listening to the DVD, the taser can be heard firing, followed by a loud scream. Officers are heard shouting "go, go, go, go, go, go." Officer Dickey, presumably, is heard asking "are you done yet? are you done?" followed by "don't you fuckin move - you're under arrest," "drop those keys," "get down on the ground," and "did I tell you to get up?" After a pause, Officer Dickey can be heard asking "where's he at?" After another pause, Officer Dickey states: "I swear to God you make one more move and I am going to light you up again." Officer Dickey is then heard saying "put your hands behind your back, you're under arrest."

**III. Standard of Review**

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

**IV. Defendants' Motion for Summary Judgment**

In moving for summary judgment, Officer Dickey relies on qualified immunity. In resolving the issue of qualified immunity on summary judgment, courts are required to engage in a two-step decisional process: (1) whether the plaintiff has shown sufficient facts to make out a violation of a constitutional right; and (2) whether the constitutional right was "clearly established" at the time of the alleged misconduct. Pearson v. Callahan, 129 S.Ct. 808, 815-16 (2009) (citing Saucier v. Katz, 533 U.S. 194, 121 (2001)). "The relevant,

dispositive inquiry in determining whether a right was clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Klein v. Long, 275 F.3rd 544, 550 (6th Cir. 2001) (quoting Saucier, 533 U.S. at 121 S.Ct. 2151, at 2156). The plaintiff bears the ultimate burden of proving "that the defendant's conduct violated a right so clearly established that a reasonable official in his position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct." Sheets v. Mullins, 287 F.3d 581, 586 (6th Cir. 2002). A district court enjoys "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 129 S.Ct. at 818.

**A. Handcuffing (Arrest) Without Probable Cause**

An arrest without probable cause clearly violates that Fourth Amendment. Klein, 275 F.3rd at 550. Probable cause to arrest exists if the facts and circumstances within the officer's knowledge were sufficient "to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." Id. at 550 (quoting Donovan v. Thames, 105 F.3d 291, 298 (6th Cir. 1997)). "[A]n individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a [police officer] who the individual knows or has reason to know is performing his or her duties is guilty of a felony . . . ." M.C.L. §§ 750.81d(1); (7)(b)(i).

Construing the pleadings and evidence in a light most favorable to Daugherty, reasonable jurors could disagree whether Officer Dickey had probable cause to arrest and handcuff Daugherty. As reasoned in Bourgeois v. Strawn, 501 F.Supp.2d 978 (E.D. Mich. 2007), although Michigan law provides that a person may not resist an unlawful order, police cannot, consistent with the Fourth Amendment, manufacture grounds to arrest an innocent person simply "by telling him to leave his home without any lawful authority to do

so, then arrest him for violating that directive." Id. at 987. In Bourgeois, the police possessed an arrest warrant for an individual believed to be living in Bourgeois' home. After Bourgeois motioned police officers to the back door from inside his home, Bourgeois was confronted at the back door by officers training their guns on him and yelling "Get out here and lay on the ground." Id. at 983. Bourgeois did not comply with the order, and instead pulled back as one of the officers tried to grab him. Id. After the officers denied Bourgeois' invitation to enter the home, and again commanded him to exit the house and get on the ground, Bourgeois admittedly "made profane comments regarding the pointing of guns at his home." Id. Bourgeois was then ordered to "go in" and get the individual police were seeking, and he complied. Citing Groh v. Ramirez, 540 U.S. 551, 559 (2004) and Payton v. New York, 445 U.S. 573, 585 (1980) for the proposition that the police could not have lawfully entered the home and removed Bourgeois without judicial authority, District Judge Lawson concluded that Bourgeois' refusal to comply with the officer's commands to "get out here and lay on the ground" could not support a violation of M.C.L. § 750.81d(1), the statute at issue here, because Bourgeois' refusal to exit his own home amounted to no crime supporting probable cause to arrest. Id. at 987-88.

Officer Dickey testified that he ordered Daugherty to leave her home, and that Daugherty refused. Daugherty testified that Officer Dickey ordered her to come up the basement steps and get on the ground because she was under arrest. Daugherty denied threatening Officer Dickey and saying "You wanna gun, I'll show you a fuckin gun." Daugherty's profane statement of "who the fuck are you to have a gun in my backyard?" did not give Officer Dickey probable cause to order Daugherty from her home, arrest Daugherty for resisting arrest under M.C.L. § 750.81d(1), or probable cause to enter Daugherty's kitchen. Bourgeois, 501 F.Supp.2d at 983, 987-88. According to Daugherty's testimony, Officer Dickey announced that she was under arrest and shot her with the first

taser after Daugherty refused to leave her home by simply remaining on the stairs and questioning Officer Dickey as to why she was under arrest. Under this scenario, reasonable jurors could conclude that Officer Dickey did not have probable cause to arrest Daugherty under M.C.L. § 750.81d(1), or to apply the initial taser cycle to assist in an arrest. Daugherty denied resisting Officer Dickey after she was first tased, testifying that she was instead yelling and screaming for Officer Dickey to stop as she moved from the basement steps of her home to the kitchen where she laid down as instructed by Officer Dickey. Daugherty testified that Officer Dickey applied the second and third tasings in attempts at coercing her into telling him where Darin was in the house, not to eliminate her resistance to arrest.

The DVD recordings are inconclusive. Whether Daugherty threatened Officer Dickey with a potential gun and charged him with keys clinched in her fist is a question of fact for the jury to decide. Construing the deposition testimony in a light most favorable to Daugherty, and consistent with the reasoning in Bourgeois, 501 F.Supp.2d at 983, 987-88, reasonable jurors could disagree whether Officer Dickey arrested Daugherty without probable cause in clear violation of the Fourth Amendment, and whether a reasonable officer in Officer Dickey's position would have clearly understood that he was under an affirmative constitutional duty not to arrest Daugherty for violating M.C.L. § 750.81d(1). Pearson, 129 S.Ct. at 815-16; Klein, 275 F.3d at 550; Sheets, 287 F.3d at 586. Defendant Officer Dickey's motion for summary judgment as to Daugherty's § 1983 claim that she was handcuffed and arrested without probable cause in violation of the Fourth and Fourteenth Amendment will be denied. Amway Distributors, 323 F.3rd at 390; Matsushita Elec., 475 U.S. at 587; Redding, 241 F.3rd at 532.

**B. Excessive Force**

A claim that a city police officer used excessive force during an arrest is governed

by the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 395 (1989). Fourth Amendment jurisprudence recognizes "that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. at 396 (citing Terry v. Ohio, 392 U.S. 1, 22-27 (1968)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." Id. at 396-397. The reasonableness of an officer's use of force is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396 (citing Terry, 392 U.S. at 20-22)). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397 (citing Terry, 392 U.S. at 21, and Scott v. United States, 436 U.S. 128, 137-139 (1978)). "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." Id. at 397 (citing Scott, 436 U.S. at 138).

A gratuitous use of force on a suspect who has already been subdued violates the Fourth Amendment. Roberts v. Manigold, 240 Fed. App'x 675, 677 (6th Cir. June 14, 2007) (finding jury question where record supported a finding that the plaintiff was "completely pinned" by a 225-pound officer, a former U of M football player, when the officers's partner continued to taser the plaintiff). When carefully analyzing the facts and circumstances of a given case, the court should consider the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect was actively resisting arrest. Id. at 677 (quoting Graham, 490 U.S. at 396).

Consistent with the analysis in Section IV, A, supra, reasonable jurors could disagree whether Officer Dickey's use of his taser on Daugherty was objectively reasonable under the facts of this case. The DVD recordings are inconclusive. If the jury believes Daugherty's version of the events, Officer Dickey did not have probable cause to believe that Daugherty was resisting arrest in violation of M.C.L. § 750.81d(1), Daugherty did not pose an immediate threat to the safety of the Officer Dickey or others, Daugherty was not actively resisting arrest, and Officer Dickey applied the second and third tasings in a gratuitous manner to coerce Daugherty into telling him where her son was located within her home. Roberts, 240 Fed. App'x at 677. A question remains whether Officer Dickey had the right to enter and arrest Daugherty within her home, let alone to apply taser force in accomplishing the arrest. Graham, 490 U.S. at 395. Whether Officer Dickey's actions in tasing Daugherty were objectively reasonable in light of the facts and circumstances confronting him remains for a jury to decide, as does whether a reasonable officer in Officer Dickey's position would have clearly understood that he was under an affirmative constitutional duty to refrain from tasing Daugherty. Id; Pearson, 129 S.Ct. at 815-16; Klein, 275 F.3d at 550; Sheets, 287 F.3d at 586. The fact that Daugherty did not suffer a sustained injury is not dispositive of her constitutional claims. Accordingly, defendant Officer Dickey's motion for summary judgment as to Daugherty's § 1983 claim that he applied excessive force in violation of the Fourth and Fourteenth Amendment will be denied. Amway Distributors, 323 F.3rd at 390; Matsushita Elec., 475 U.S. at 587; Redding, 241 F.3rd at 532.

**C. Malicious Prosecution**

"When a § 1983 claim is predicated on an allegation of false arrest, false imprisonment, or malicious prosecution, such claim must fail if probable cause for arrest exists." Scott v. City of Bexley, 11 Fed. App'x 514, 516 (6th Cir. May 24, 2001) (quoting

Hansel v. Bisard, 30 F.Supp.2d 981, 985-86 (E.D. Mich. 1998)). This is true "regardless of whether the defendant had malicious motives for arresting the plaintiff." Id. As set forth in Section IV, A, supra, a question of fact remains whether Officer Dickey had probable cause to arrest Daugherty for violating M.C.L. § 750.81d(1).

Officer Dickey cites Skousen v. Brighton High School, 305 F.3d 520, 529 (6th Cir. 2002) for the proposition that he cannot be held liable for malicious prosecution because the Roseville prosecutor's office, not he, made the decision to prosecute Daugherty. Before reaching the conclusion that the officer in Skousen could not be held liable for malicious prosecution, the Sixth Circuit panel found that there was probable cause to arrest and prosecute, and that there was no evidence that the officer had presented untruthful evidence or had testified untruthfully at trial. Id. Here, Officer Dickey's complaint and trial testimony that Daugherty threatened "You wanna gun, I'll show you a fuckin gun!" formed the basis of Daugherty's criminal prosecution, and remain subject to a truthfulness challenge in this lawsuit. The court does not read Skousen to foreclose a claim of malicious prosecution where there is evidence that the arresting officer lacked probable cause to arrest and caused a criminal prosecution to proceed based on the officer's knowingly false testimony. It remains reasonably disputed whether Officer Dickey's allegedly false accusations "caused" Daugherty to be prosecuted. Id. at 529. Whether a reasonable officer in Officer Dickey's position would have clearly understood that he was under an affirmative constitutional duty to refrain from allegedly making false allegations likewise remains subject to reasonable dispute. Id; Pearson, 129 S.Ct. at 815-16; Klein, 275 F.3d at 550; Sheets, 287 F.3d at 586. Accordingly, defendant Officer Dickey's motion for summary judgment as to Daugherty's § 1983 claim that Officer Dickey maliciously prosecuted her in violation of the Fourth and Fourteenth Amendment will be denied. Amway Distributors, 323 F.3rd at 390; Matsushita Elec., 475 U.S. at 587; Redding, 241

F.3rd at 532.

## D. Municipal Liability

In opposing summary judgment with respect to defendant Roseville, Daugherty argues: (1) Officer Dickey was only suspended for three days after filing a false police report that he was involved in a minor traffic accident with his patrol car in the City of Roseville, when in fact the accident occurred outside of Roseville; (2) Officer Dickey was previously sued by a woman who alleged that Officer Dickey tasered her while she was still handcuffed; and (3) the City of Roseville did not follow up on Daugherty's citizen's complaint after she was acquitted of the criminal charges.

To prevail on her claim that City of Roseville is liable, Daugherty must prove that Officer Dickey's actions were the product of an unconstitutional policy, custom, or practice of "deliberate indifference" to her constitutional rights. Oklahoma v. Brown, 520 U.S. 397, 405 (1997) (citing Canton v. Harris, 489 U.S. 378, 389 (1989) and Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 694 (1978)). A municipality may not be held liable under § 1983 unless its deliberate action was the "moving force" behind the plaintiff's deprivation of federal rights. Id. (citing Monell, 436 U.S. at 694). "[R]igorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." Brown, 520 U.S. at 405 (citing Canton, 489 U.S. at 391-392). A municipality may be held liable for a failure to supervise if the municipality was put on notice that a program did not prevent constitutional deprivations yet continued to take the same approach in deliberate indifference to continuing constitutional violations, that is, a continuous pattern of tortious conduct as opposed to an officer being involved in a single tortious event. Id, at 408. A single incident may support a finding of "deliberate indifference" where a "highly predictable consequence" results from the officer's obvious lack of specific tools to handle a situation arising from a deliberate indifference to train. Id,

at 409, 410. "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality . . . can a city be liable for such a failure under § 1983." Canton, 489 U.S. at 391. In the context of an alleged failure to discipline, the applicable "deliberate indifference" standard requires "a showing of a history of widespread abuse that has been ignored by the City." Berry v. City of Detroit, 25 F.3d 1342, 1354 (6th Cir. 1994) (citing Canton, 489 U.S. at 397 (O'Connor, J., concurring in part and dissenting in part)). An alleged policy of inaction "must reflect some degree of fault before it may be considered a policy upon which § 1983 liability may be based." Garretson v. City of Madison Hgts, 407 F.3d 789, 796 (6th Cir. 2005).

Construing the pleadings and evidence in a light most favorable to Daugherty, reasonable jurors could not conclude that a City of Roseville policy, custom, or practice was the "moving force" behind Officer Dickey's alleged constitutional violations. Reasonable jurors could not conclude from Officer Dickey's filing of a false police report related to a minor motor vehicle accident that Roseville was put on notice that Officer Dickey would file subsequent false police reports against citizens accusing them of crimes they did not commit or to cover up his use of excessive force. Officer Dickey filed a false report that a traffic accident in his patrol car happened within the City of Roseville to cover-up the fact that the accident actually occurred at a fellow Officer's house outside the City limits where Officer Dickey dropped in at a party while on duty. Officer Dickey's willingness to stage the accident within City limits, although disturbing, does not raise a reasonable inference that City of Roseville was now on notice that Officer Dickey would file false complaints against citizens to cover-up his foreseeable use of excessive force. Brown, 520 U.S. at 405, 408. It is undisputed that Officer Dickey was disciplined for filing the false report.

Officer Dickey's involvement in a prior lawsuit accusing him of tasering a female suspect while she was still handcuffed also fails to raise a reasonable inference that

Roseville adopted a policy of deliberate indifference towards Officer Dickey's alleged use of excessive force. Daugherty admits that Roseville changed it policy with respect to the use of a taser on secured prisoners after this prior incident. The lawsuit was eventually settled without factual findings as to whether or not Officer Dickey had in fact gratuitously applied his taser. The record does not raise a reasonable inference that Roseville unreasonably believed Officer Dickey's version of the events, and made a conscious choice of deliberate indifference toward whether Officer Dickey would, in the future, apply excessive force using a taser. Canton, 489 U.S. at 391. Daugherty has not proffered evidence of a history of widespread abuse involving Roseville Police Officers which was ignored by the City. Berry, 25 F.3d at 1354. The fact that Officer Dickey was previously sued for applying excessive force with a taser, and that the lawsuit settled, does not meet the rigorous standards of culpability and causation for demonstrating that a Roseville policy, custom, or practice was the moving force behind Officer Dickey's instant alleged constitutional violations. Brown, 520 U.S. at 405.

The record does not support a finding that Roseville failed to follow-up on Daugherty's citizen complaint after she was acquitted. Daugherty's acquittal following a state court jury trial establishes only that the evidence proffered at the criminal trial did not establish beyond all reasonable doubt that Daugherty had resisted arrest in violation of M.C.L. § 750.81d(1). It is undisputed that Roseville Officers continued their attempts to contact Daugherty after her acquittal, but to no avail. Daugherty testified that she moved from 26201 Compson in Roseville to Ray, Michigan, shortly after the July 1, 2007 incident. Daugherty was acquitted on March 6, 2008. Construing the record evidence in a light most favorable to Daugherty, reasonable jurors could not conclude that, with some degree of fault, Roseville ceased investigating Daugherty's citizen complaint after her acquittal. Garretson, 407 F.3d at 796. Daugherty's argument that Roseville condoned Officer

Dickey's alleged constitutional violations is not reasonably supported on this record.

Reviewing the evidence proffered to support the claim that City of Roseville adopted a requisite policy, custom, or practice of deliberate indifference towards Daugherty's constitutional rights, reasonable jurors could not conclude that City of Roseville is liable for the alleged acts of Officer Dickey. Monell, 436 U.S. at 694; Matsushita Elec., 475 U.S. at 587; Amway Distributors, 323 F.3d at 390. City of Roseville is entitled to summary judgment as a matter of law. Id.

**V. Conclusion**

For the reasons set forth above, defendants' motion for summary judgment is hereby GRANTED, IN PART, to the extent plaintiff Daugherty alleges municipal liability against defendant City of Roseville. Count II alleging § 1983 municipal liability against City of Roseville is hereby DISMISSED with prejudice. Defendants' motion for summary judgment is hereby DENIED, IN PART, to the extent Daugherty alleges Officer Dickey is liable under § 1983 for arresting Daugherty without probable cause, applying excessive force, and maliciously prosecuting in violation of the Fourth and Fourteenth Amendments. S O ORDERED.

Dated: August 31, 2009

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on August 31, 2009, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk